UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
WAYNE MILLER,

                       Plaintiff,

          - against -

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF BUILDINGS,
COMMISSIONER RICK D. CHANDLER P.E, in his
individual and official capacities, FRANK DAMIANI,
in his individual and official capacities, HUGH
MCQUILLAN, in his individual and official capacities,

                      Defendants.
---------------------------------------------------------- x

**MEMORANDUM & ORDER**

17 CV 4198 (RJD)

DEARIE, District Judge:

      Wayne Miller ("Plaintiff" or "Miller") brings this action under 42 U.S.C. § 1983 and New York state law against the City of New York, the Department of Buildings ("DOB") and DOB employees in their individual and official capacities (together, "Defendants") principally alleging procedural due process violations. Miller's claims relate to a summons and Stop Work Order issued because Miller, who holds a New York City Hoisting Machine Operator Class A License ("License"), was operating a "tower crane" without the requisite certification. Defendants move for summary judgment because Miller's claims are barred by the doctrine of res judicata or collateral estoppel, and because Miller has otherwise failed to establish a procedural due process claim as a matter of law. For the reasons that follow, and as discussed at oral argument on May 2, 2019, Defendants' motion for summary judgment is granted.

## BACKGROUND

      In 2016, Miller operated a "tower crane" at a construction site in Brooklyn, New York while in possession of an HMO Class A license, which authorized him to operate cranes with

booms under 200 feet provided he complied with certain "fitness" requirements. 1 RCNY § 104-09(b) (certifications authorizing the "operation of the type of equipment for which the license is held" must be obtained within one year of license renewal). To that end, Miller possessed four certifications for different crane types, each of which were required for Class A licensees.[1] However, none of these certifications permitted Miller to operate a tower crane.

Defendant McQuillan observed Miller operating a tower crane without a certification and issued him a summons and "Stop Work Order." When Miller attended an Office of Administrative Trials and Hearings ("OATH") Hearing to contest the summons and subsequent notice of violation, the OATH hearing officer concluded that, notwithstanding his license, Miller failed to comply with his license's "fitness" requirement because he did not have a tower crane certification. Miller was fined $1600. Miller appealed to the OATH appeals board who concluded that the DOB had "satisfied its evidentiary burden" of demonstrating Miller had violated applicable laws and regulations. At no point was Miller's license revoked or suspended.

Miller then initiated an Article 78 proceeding in New York Supreme Court challenging the OATH hearing officer's final determination as arbitrary and capricious and reiterating his principal claim that the summons and Stop Work Order, which amounted to a de facto license suspension, were unlawful because his license permitted him to operate a tower crane without an additional certification. Miller's Petition was denied and the Court found the DOB correctly determined that while the "Administrative Code provides the general parameters for the hoisting machine operator's license" it "does not preclude the requirement that certifications are required

---

[1] 1 RCNY § 104-09(d) provides "[w]here a certification for the operation of a type of hoisting machine has been established by Table 1 of this subdivision, no licensed hoisting machine operator may operate such type of machinery until the licensee possesses a certification for that type of hoisting machine and such certification has been listed on the hoisting machine operator's license by the department."

to operate specific types of hoisting machines," as spelled out in the "fitness" provision under 1 RCNY § 104-09(b). The Court added Miller "did not lose his hoisting machine operator's license or the ability to operate machines for which he had the requisite certification and for which certification was not required. Instead, he was simply fined for the violation." Defs.' Br. Ex. I, ECF No. 30-9, at 5. Miller appealed the decision and filed the instant lawsuit.

## LEGAL STANDARD

The Court must grant summary judgment where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing the non-existence of a genuine issue of material fact. Sorano v. Taggart, 642 F. Supp. 2d 45, 50 (S.D.N.Y. 2009). The moving party may submit affirmative evidence negating an essential element of the non-moving party's claim or the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of its claim. Dixon v. City of New York, 2008 WL 4453201, at *9 (E.D.N.Y. Sept. 30, 2008). The non-moving party may then submit evidence showing there is a genuine fact issue for trial. Sorano, 642 F. Supp. 2d at 50. If, after the non-moving party responds, the Court determines the moving party has satisfied its ultimate burden of persuasion "that there is no genuine issue of material fact for trial," summary judgment must be granted. Id.

## DISCUSSION

I.  Claim and Issue Preclusion

    *a. Res Judicata*

Miller's section 1983 claims for declaratory relief are barred by the doctrine of res judicata because his Article 78 action "involved an adjudication on the merits," Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 285 (2d Cir. 2000), and Miller's claims for

3

declaratory relief "could have been raised" in his Article 78 proceeding, Karamoko v. New York City Housing Auth., 170 F. Supp. 2d 372, 376-77 (S.D.N.Y. 2001). It is well-settled that Article 78 proceedings constitute "an adjudication on the merits" for purposes of a res judicata analysis. Merced v. Ponte, 2019 WL 1208791, at *7 (E.D.N.Y. Mar. 13, 2019) (citing Bray v. New York Life Ins., 851 F.2d 60, 63-64 (2d Cir. 1988)). Moreover, Miller's constitutional claims seeking declaratory relief arise out of the "same transaction or series of transactions" as those at issue in his Article 78 proceeding and thus *could have been raised* in his Article 78 proceeding. Brooks v. Giuliani, 84 F.3d 1454, 1463 (2d Cir. 1996).

Miller cannot "elude" claim preclusion "merely by invoking legal terms of art with constitutional mystique." Monahan, 214 F.3d at 290. In his Article 78 proceeding, Miller claimed his license entitled him to operate a tower crane and therefore the summons and Stop Work Order, which removed him from his tower crane work site, were unlawful and amounted to a de facto license suspension. However, the Article 78 judge agreed that (i) Miller's license did not confer a right to operate a tower crane and thus the summons and Stop Work Order did not deprive him of any protected interest and, (ii) in any event, Miller's license was never suspended or revoked. Miller's section 1983 claim is no different—he claims he was deprived of constitutionally-protected rights when the summons and Stop Work Order were unlawfully issued.

On the other hand, because money damages are not available in Article 78 proceedings, res judicata will not bar Miller's section 1983 claims for money damages. Colon v. Coughlin, 58 F.3d 865, 870 n.3 (2d Cir. 1995) ("[C]laim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter" (citing Davis v. Halpern, 813 F.2d 37,

39 (2d Cir. 1987))). Because Miller's federal claims for declaratory relief mimic those raised in his Article 78 petition and seek relief that would have been available in that proceeding, those claims are barred by the doctrine of res judicata; however, Miller's claims for money damages are not barred by res judicata because such relief was not available during his Article 78 proceeding.

*b. Collateral Estoppel*

Miller's section 1983 claims for money damages are, however, barred by the doctrine of collateral estoppel. Semantics aside, Miller cannot use section 1983 as an end run around his Article 78 proceeding to achieve an impermissible "second bite at the apple." Pappas v. Giuliani, 118 F. Supp. 2d 433, 439 (S.D.N.Y. 2000). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of *the issue* in a subsequent suit on a different cause of action involving a party to the first action." McBride v. Bratton, 122 F.3d 1056, 1997 WL 383521, at *2 (2d Cir. 1997) (emphasis added). A judgment pursuant to Article 78 thus precludes relitigation of any *issue* already decided in that Article 78 proceeding, id., and "the preclusive effect of prior litigation is not affected by the fact that issues raised in the later-filed lawsuit were not previously phrased in constitutional terms." Id.; Genova v. Town of Southampton, 776 F.2d 1560, 1562 (2d Cir. 1985) ("underlying all these claims, even assuming that they assert constitutional grievances, is the *single premise* that [Plaintiff] was ordered to lie" (emphasis added)).

In this federal action Miller seeks to relitigate the same issues already decided in his Article 78 proceeding—principally, whether his license entitled him to operate a tower crane and if so whether the summons and Stop Work Order were unlawful. Justice St. George affirmed that Miller's license did not, by itself, authorize operation of a tower crane and thus the summons

5

and Stop Work Order were not unlawful. Miller now seeks relitigation of the same issues but cloaks his claims in constitutional cloth. Nevertheless, the issues rely on the "single premise" that the summons and Stop Work Order were unlawful because Miller was licensed to operate a tower crane. Genova, 776 F.2d at 1562. Accordingly, Miller's constitutional claims for money damages are barred by the doctrine of collateral estoppel.

II. Due Process Claims

Even if Miller's claims were not precluded, Miller fails to establish a due process violation as a matter of law. First, Miller was not deprived of a property interest. Though it is undisputed that Miller has a property interest in his license, Miller, conflates his property interest in his license with his "unilateral expectation" that the license includes an endorsement to operate a tower crane. Leon v. Rockland Psychiatric Ctr., 232 F. Supp. 3d 420, 434 (S.D.N.Y. 2017). However, Miller's license, without the requisite tower crane certification, does not confer a constitutionally-protected property right to operate a tower crane. As explained in Miller's prior proceedings, "[t]he Administrative Code provides the general parameters for the hoisting machine operator's license but does not preclude the requirement that certifications are required to operate specific types of hoisting machines." ECF No. 30-9, at 5. Miller's license was subject to certain "fitness requirements," including obtaining "one or more valid certification(s) issued by an organization accredited to offer crane operator certifications . . . authoriz[ing] the operation of the type of equipment for which the license is held or sought." ECF No. 32, Appendix. Therefore, without a tower crane certification, Miller's license confers no constitutionally-protected right to operate a tower crane.

In any event, Miller's license was never revoked or suspended and the summons and Stop Work Order do not amount to a "de facto" suspension. Indeed, Miller admitted during his

deposition (i) his license was never suspended, (ii) his license was never revoked, (iii) after the Stop Work Order was issued he could have gone straight back to work operating a different type of crane, and (iv) he returned to work three-and-a-half weeks later in the "same position" he previously held after obtaining the requisite certification. Miller Dep. 35:4-36:16; 62:2-16; 80:6-11. Compare with Polito v. City of New York, Dep't of Health, 2016 WL 3676425, at *5 & n.2 (E.D.N.Y. July 7, 2016) (Plaintiff suffered no deprivation of a property interest in her license to teach special education where there was "no formal action taken against her license," she was able to continue to use her license through a different agency within three months of her termination and there was no de facto license suspension because she "was quickly able to find new Early Intervention work"). Like Polito, (i) Miller's license was neither revoked nor suspended, (ii) Miller was able to continue to use his license operating non-tower cranes immediately after receiving the summons and Stop Work Order, and (iii) Miller could operate tower cranes once he received the appropriate certification—three and a half weeks after receiving the summons and Stop Work Order.

Second, Miller was not deprived of his liberty interest in his vocation as a Class A crane operator. "The freedom to engage in any of the common occupations of life" does not mean "that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another." Leon, 232 F. Supp. 3d at 434 (the right to engage in any of the common occupations of life "is not so broad as to protect the right to a particular job."). Miller was free to pursue another crane operating job and Miller was also free to continue operating tower cranes, *once he received the requisite certification.* Accordingly, because "[t]he challenged action [] does not appear to effectively prohibit [Miller] from engaging in a

7

profession, or pursuing any job in a given field," there is no deprivation of a liberty interest. Weidner v. City of New York, 2017 WL 2984021, at *4 (S.D.N.Y. June 20, 2017).[2]

III. Remaining Claims

Miller's Equal Protection claim is dismissed because the Complaint is devoid of "any fact or detail regarding a single similarly situated crane operator who purportedly received different treatment" based on "impermissible considerations," and during his deposition, Miller could not identify a single similarly situated crane operator who operated a tower crane without the requisite certification. ECF No. 32, at 16; Miller Dep. Tr. 63:19-64:6 (Q: Well, are there names that you know of in your head? A: I do not know of anybody – well, you hear things, but I don't know and I'm not going to give second-hand testimony. You know, I mean, I didn't write this Complaint. Q: Are there specific people that you know of? Can you give me their names—A: No.).

Finally, because Miller's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Miller's state law claims.

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is granted.

SO ORDERED.

Dated: Brooklyn, New York
May /ð 2019

s/ Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[2] Because Miller's due process claim fails as a matter of law so too does his Monell claim.